UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONTENT & COMMERCE, INC. and KEVIN DETRUDE,<br><br>    *Plaintiffs*,<br><br>vs.<br><br>DONNA CHANDLER, SHOW COLORS, INC., and MY K9 BEHAVES, LLC,<br><br>    *Defendants*. | No. 1:20-cv-02488-JMS-DLP |

SHOW COLORS, INC., DONNA CHANDLER, and MY K9 BEHAVES, LLC,

    *Consol. Plaintiffs,*

vs.

KENETH ZWEIGEL, CONTENT & COMMERCE, INC., KEVIN DETRUDE, and MY K9 BEHAVES, INC.,

    *Consol. Defendants.*

SHOW COLORS, INC. and DONNA CHANDLER,

    *Counterclaimants,*

vs.

CONTENT & COMMERCE, INC., KEVIN DETRUDE, KENETH ZWEIGEL, and MY K9 BEHAVES, INC.,

    *Counter Defendants.*

1

**ORDER**

My K9 Behaves, LLC ("the Company") is an Indiana limited liability company with the following members: Content & Commerce Inc. ("C&C"); Kevin DeTrude; and Show Colors, Inc. ("Show Colors") [Filing No. 65 at 6.] C & C is owned and operated by Keneth Zweigel. [Filing No. 65 at 41.] Show Colors is owned by Donna Chandler. [Filing No. 65 at 6.] The Company was formed to create and sell canine training materials based on Ms. Chandler's expertise as a dog trainer. [Filing No. 65 at 41.] This lawsuit concerns disputes between the parties as to the ownership of certain intellectual property related to the Company's business and whether the Company should be judicially dissolved. C&C and Mr. DeTrude, individually and derivatively on behalf of the Company, filed their First Amended Verified Complaint for Damages, Injunctive Relief, Declaratory Judgment, and Demand for Jury Trial on March 16, 2021. [Filing No. 63.] Ms. Chandler and Show Colors (collectively, "Consolidated Plaintiffs") filed their Answer and Counterclaims on March 18, 2021, naming Mr. Zweigel as a Counter Defendant and alleging ten counterclaims. [Filing No. 65 at 40-55.] Mr. DeTrude and Mr. Zweigel (collectively, "Consolidated Defendants") have filed a Motion to Dismiss Counterclaim 10, which alleges intentional infliction of emotional distress under Indiana law. [Filing No. 68.] Consolidated Defendants ask that if their motion is granted, Mr. Zweigel be terminated as an individual party. [Filing No. 68 at 2.] The motion is now ripe for the Court's consideration.

# I.
## STANDARD OF REVIEW

As an initial matter, the parties disagree on which standard of review applies. In response to the Motion to Dismiss, Consolidated Plaintiffs attach Exhibit A, an email from Mr. Zweigel to Mr. DeTrude, and assert that under Federal Rule of Civil Procedure 12(d), the Motion to Dismiss should be converted into a Federal Rule of Civil Procedure 56 motion for summary judgment, and

therefore the summary judgment standard applies. [Filing No. 77 at 2-3; Filing No. 77-1] Consolidated Defendants, on the other hand, argue that the motion to dismiss standard should apply because Exhibit A is not attached to the Motion to Dismiss, but to the response; the Court is not required to consider Exhibit A; and Exhibit A is not relevant. [Filing No. 79 at 2-3.]

When considering a motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "may consider the counterclaim, 'documents that are attached to the [counterclaim], documents that are central to the [counterclaim] and referred to in it, and information that is properly subject to judicial notice.'" *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815, 823 (N.D. Ill. 2020) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (alterations in original). These materials are considered part of the pleadings for purposes of Rule 12(b)(6) motions. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (noting that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," and "[s]uch documents may be considered by a district court in ruling on the motion to dismiss."). However, Rule 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Accordingly, when a party presents documents at the motion to dismiss stage[1] that are not part of the pleadings, "the court must either convert the 12(b)(6) motion into a motion for summary

---

[1] Consolidated Defendants assert that attaching additional materials to a response to a motion to dismiss—rather than to the motion to dismiss itself—cannot convert the motion to dismiss into a motion for summary judgment. [*See* Filing No. 79 at 3.] Consolidated Defendants provide no legal authority supporting this position, and it does not appear to be the law in this Circuit. *See Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 714 (7th Cir. 2013) (concluding that the district court erred in failing to adhere to Rule 12(d) where it considered evidence that appellants submitted "in response to the Rule 12(b)(6) motions").

judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

Consolidated Plaintiffs' Exhibit A is an email in which Mr. Zweigel forwarded to Mr. DeTrude a solicitation from an online learning website, asking: "Should we piss off Donna even more and open up a new classroom here?" [Filing No. 77-1 at 1.] Mr. Zweigel also describes getting an "adrenaline rush" from participating in litigation and compares the courtroom to a casino "in that you gamble based on how good you believe the odds are in your favor." [Filing No. 77-1 at 1.] The email is not attached to or referenced in Consolidated Plaintiffs' Counterclaims, and none of the factual allegations in support of Counterclaim 10 address the subject matter of Exhibit A or even alleged harassment by email more generally. [*See* Filing No. 65.] And, notably, Consolidated Plaintiffs did not seek to amend their Counterclaim in response to the Motion to Dismiss. Exhibit A, therefore, is a matter outside the pleadings that the Court may only consider if it converts the Motion to Dismiss into a motion for summary judgment. Moreover, although Consolidated Plaintiffs characterize Exhibit A as evidence of "[t]he callous disregard of Donna Chandler's emotional well-being," they also acknowledge that Ms. Chandler—who was not a recipient of the email—did not become aware of the email until it was produced in discovery. [Filing No. 77.] The email could potentially be relevant to demonstrating Mr. Zweigel's intent, but because it was not sent to Ms. Chandler and is not directly related to the conduct forming the basis of her intentional infliction of emotional distress claim, the email certainly is insufficient, on its own, to permit the Court to adjudicate the intentional infliction of emotional distress claim on the merits using the summary judgment standard. *See* Fed. R. Civ. P. 56(c)(1)(A) (explaining that a party asserting that a fact is or cannot be genuinely disputed must support that assertion by citing

to evidentiary materials in the record).  Accordingly, the Court will not consider Exhibit A and will decide Consolidated Defendants' Motion to Dismiss using the motion to dismiss standard.

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  To that end, the complaint need only provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).  This review is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

## II.
### BACKGROUND

Consistent with the standard of review described above, the following allegations from Consolidated Plaintiff's First Answer and Counterclaims are accepted as true solely for purposes of deciding Consolidated Defendants' Motion to Dismiss.

As part of the Company's Operating Agreement,[2] Ms. Chandler agreed to assign "any and all existing goodwill and ownership relating to the common law and previously registered trademark interests pertaining to the Trademark and Copyrights, including actual books and all publishing rights, to the Company" in exchange for fifty percent share of all profits. [Filing 63-1 at 2.] The parties further agreed that "[if] the Company is dissolved or ceases to operate, or if Donna Chandler ceases to be a Member of Company by decision of the Members under paragraph 6, the Trademark and Copyrights will be assigned back to Donna Chandler." [Filing No. 63-1 at 2.] Paragraph 6 states that "[d]ecisions affecting the Company will be made by majority rule of the three Members, except that Donna Chandler must be one of the two Members in any majority-rule decision." [Filing No. 63-1 at 2.] Ms. Chandler then assigned her portion of the Company to her company Show Colors. [Filing No. 65 at 40.]

Starting in December of 2019, Consolidated Defendants "joined forces against [Ms.] Chandler and began a systematic campaign of harassment as defined by [Indiana Code] § 35-45-10-2."[3] [Filing No. 65 at 52.] The harassment began after Ms. Chandler confronted Mr. Zweigel

---

[2] In contrast to the email exhibit discussed above, the Operating Agreement is precisely the type of document that the Court can consider on a motion to dismiss, because it is attached to the Complaint, specifically referred to in the Complaint and the Counterclaims, and is germane to the issues raised in the Complaint and the Counterclaims, many of which depend upon interpretation of the Operating Agreement. *See Williamson*, 714 F.3d at 436; *Laborers' Pension Fund*, 450 F. Supp. 3d at 823.

[3] In relevant part, Indiana Code § 35-45-10-2, a criminal statute, defines harassment as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible

and Mr. DeTrude with her belief that they were conducting business within the scope of the Company's objective for their own personal benefit.  [Filing No. 65 at 52-53.]  In addition, Mr. Zweigel and Mr. DeTrude "had been harassing [Ms.] Chandler about her prospective authorship of a new book," which the men maintained would constitute Company property, but Ms. Chandler believed "was entirely in the province of [Ms.] Chandler."  [Filing No. 65 at 53.]

After Ms. Chandler confronted the Consolidated Defendants, "the harassment worsened and each meeting among the Members, whether by phone or in person, broke down into shouting matches between [Mr. Zweigel and Mr. DeTrude] aligned against [Ms.] Chandler."  [Filing No. 65 at 53.]  "The gist of the shouting matches revolved around the . . . interpretation of the Company Objective and whether the prospective new book . . . was in the remit of the Company Objective."  [Filing No. 65 at 53.]  In one particular "shouting match" that occurred over the phone, Mr. Zweigel "screamed" that "the only thing the Company owns is the 'Video,'" and Mr. DeTrude "quickly admonished [Mr. Zweigel] to 'shut-up.'"  [Filing No. 65 at 53.]  In another incident, which occurred on an airplane, Mr. DeTrude "began shouting at [Ms.] Chandler" in a way that was "so bad and disruptive to the other passengers that the stewardess came to [Ms.] Chandler's aid and asked if she was alright, and the airplane was nearly diverted to an early landing."  [Filing No. 65 at 53-54.]

According to Ms. Chandler, the harassment has been "so extreme as to cause any reasonable person to suffer emotional distress."  [Filing No. 65 at 53.]  As a result, Ms. Chandler suffers from "headaches, reduced levels of energy and insomnia."  [Filing No. 65 at 54.]

---

contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress."

Consolidated Defendants has moved to dismiss Counterclaim 10 for failure to state a claim, and upon the dismissal of the Counterclaim 10, ask that Mr. Zweigel be dismissed as an individual party in this matter.  [Filing No. 68 at 2.]

### III.
#### DISCUSSION

**A.  Intentional Infliction of Emotional Distress (Counterclaim 10)**

Consolidated Defendants argue that the two incidents described by Consolidated Plaintiffs do not amount to intentional infliction of emotional distress under Indiana law.  [Filing No. 69 at 2].  They argue that a "raised voice" does not meet the standard of conduct required for intentional infliction of emotional distress and that the Counterclaim does not plausibly show that the Consolidated Defendants behaved with the intent to inflict emotional harm on Ms. Chandler—the intent was to discuss the business.  [Filing No. 69 at 4.]

In response, Consolidated Plaintiffs state that the Consolidated Defendants fail to account for the campaign of harassment described in the Counterclaim, that they reduce the conduct to the two incidents that were used as examples, and that the conduct exceeds a "raised voice."  [Filing No. 76 at 2-3.]  They emphasize that one of the instances nearly resulted in an airplane being rerouted.  [Filing No. 76 at 3.]  They also argue that the Consolidated Defendants conflate the Indiana Supreme Court's definition of intentional infliction of emotional distress with the federal pleading requirement of a short plain statement.  [Filing No. 77 at 3].

In reply, Consolidated Defendants clarify that they do not contend that Consolidated Plaintiffs fail to make a short and plain statement under Rule 8(a)(2), but instead argue that they fail to describe any conduct that "exceeds all bounds typically tolerated by a decent society and that causes mental distress of a very serious kind," as required for intentional infliction of emotional distress claims.  [Filing No. 79 at 4.]

To state a claim for intentional infliction of emotional distress, the plaintiff must establish that the defendant (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013) (citing *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). Indiana courts use a rigorous standard to establish extreme or outrageous conduct. *Westminster*, 992 N.E.2d at 870. In order for a defendant's conduct to be extreme or outrageous, it is not enough that "defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind. Ct. App. 2005) (citation omitted). Instead, liability can be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 456-57. "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996) (quoting Restatement (Second) of Torts § 46 at 72-73). "In the appropriate case, the question [of whether conduct is extreme and outrageous] can be decided as a matter of law." *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999).

In *Gable*, plaintiff homeowners got into a dispute with their contractor and his wife concerning construction work being done on their home. 673 N.E.2d at 807. As a result, the contractor's wife called one of the homeowners seven times in one hour, yelling about allegations that the homeowners had made about the contractor, threatening to "repossess" the home, demanding that the homeowners pay for the construction, threatening to come over, and repeatedly

stating that the homeowners "would pay." *Id.* The Indiana Court of Appeals concluded that while "the phone calls may have been unreasonable and abusive," they were not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress. *Id.* at 811. In so concluding, the court observed that the calls "were made in the context of a construction dispute" and did not contain any obscene language or express threats of violence. *Id.*

Consolidated Plaintiffs' allegations, accepted as true, do not rise to the level of extreme or outrageous conduct necessary to state a claim for intentional infliction of emotional distress under Indiana law. Consolidated Plaintiffs make the conclusory allegations that Mr. Zweigel and Mr. DeTrude engaged in "a systematic campaign of harassment," [Filing No. 65 at 52], and that the harassment was "so extreme as to cause any reasonable person to suffer emotional distress," [Filing No. 65 at 53], but the only conduct they specifically point to is a series of "shouting matches"[4] including one over the phone and one on an airplane. While the Court does not condone people shouting at each other, especially where it results in the potential for a passenger flight to be rerouted, Consolidated Plaintiffs do not allege any facts that would permit the Court to conclude that Consolidated Defendants' conduct was extreme or outrageous as a matter of law. Like the phone calls at issue in *Gable*, the alleged interactions between Mr. DeTrude and Mr. Zweigel on the one hand and Ms. Chandler on the other are not alleged to include obscene language, express threats of violence, or any other conduct that exceeds the bounds of what is acceptable in a civilized society. *See Lachenman*, 838 N.E.2d at 456; s*ee also Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012) (finding no extreme or outrageous conduct where bank security officer accused employee of fraud, "shouted directly in [the employee's] face that [the employee's

_____

[4] The Court observes that the use of the word "matches" implies that Ms. Chandler also engaged in the shouting of which she complains.

husband] was 'garbage' and a 'piece of shit'"); *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) (finding no intentional infliction of emotional distress where defendant repeatedly grabbed for his holstered gun, shook the gun, and threatened to "jump astraddle" of the plaintiff); *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001) (finding defendant's actions were not extreme or outrageous where he "accused [plaintiff] of substance abuse, shoplifting, and dishonesty in a gruff and intimidating manner").

Accordingly, Consolidated Defendants' Motion to Dismiss is **GRANTED** to the extent that Counterclaim 10 for intentional infliction of emotional distress is **DISMISSED**.

### B. Dismissal of Mr. Zweigel as an Individual Party

Consolidated Defendants argue that Mr. Zweigel is only an individual party to Counterclaim 10, and that if that counterclaim is dismissed, Mr. Zweigel should be dismissed as a party altogether. [Filing No. 68] They further argue that his other involvement in this matter is entirely through C&C, the corporation he owns and operates. [Filing No. 69 at 4.]

In response, Consolidated Plaintiffs argue that it is the individual Mr. Zweigel, and not his company, who intentionally inflicted emotional distress upon Ms. Chandler. [Filing No. 76 at 3.] Consolidated Plaintiffs make no argument as to why Mr. Zweigel remains a party to the other Counterclaims. [*See* Filing No. 77.]

In reply, Consolidated Defendants do not address this issue further. [*See* Filing No. 79.]

Although not addressed by Consolidated Plaintiffs, the Court observes that Mr. Zweigel appears to be specifically implicated in Counterclaim 4: "Plaintiff / Consolidated Defendant Zweigel, as the IT officer of Company, is the Plaintiff / Consolidated Defendant that should be ordered to specifically perform the return of the sum total of Defendant / Consolidated Plaintiff Chandler's personality in possession of the DeTrude Parties." [Filing No. 65 at 46-47.] However,

because Consolidated Plaintiffs did not address in their response to the Motion to Dismiss the argument that Mr. Zweigel individually is not a party to any other claim, any opposition to that argument is waived. *See*, *e.g.*, *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (noting that an argument not addressed in response to a motion to dismiss is waived). Therefore, Consolidated Defendants' Motion to Dismiss is **GRANTED** to the extent that Mr. Zweigel is **DISMISSED** as an individual party to this action.

## IV.
### CONCLUSION

For the foregoing reasons, Consolidated Defendants' Motion to Dismiss, [68], is **GRANTED**. Consolidated Plaintiffs' Counterclaim 10 for intentional infliction of emotional distress is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to terminate Mr. Zweigel as a party.

Date: 6/25/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**