UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CONTENT & COMMERCE, INC. and KEVIN DETRUDE, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | No. 1:20-cv-02488-JMS-DLP |
| DONNA CHANDLER, SHOW COLORS, INC., and MY K9 BEHAVES, LLC, | ) ) ) | |
| *Defendants*. | ) ) | |
| SHOW COLORS, INC., DONNA CHANDLER, and MY K9 BEHAVES, LLC, | ) ) ) | |
| *Consol. Plaintiffs,* | ) ) | |
| vs. | ) ) | |
| CONTENT & COMMERCE, INC., KEVIN DETRUDE, and MY K9 BEHAVES, LLC, | ) ) ) | |
| *Consol. Defendants*. | ) ) | |
| SHOW COLORS, INC. and DONNA CHANDLER, | ) ) ) | |
| *Counterclaimants*, | ) ) | |
| vs. | ) ) | |
| CONTENT & COMMERCE, INC., KEVIN DETRUDE, and MY K9 BEHAVES, LLC, | ) ) ) | |
| *Counter Defendants.* | ) ) | |

**ORDER**

Presently pending before the Court are: (1) a Motion to Alter or Amend the Court's Findings of Fact and Conclusions of Law or, In the Alternative, Motion to Set Aside ("Motion to Reconsider") filed by Plaintiffs/Consolidated Defendants/Counter Defendants Content & Commerce, Inc. ("Content & Commerce") and Kevin DeTrude, (collectively, "the C&C Parties"), [Filing No. 204]; and (2) a Motion for Civil Contempt of Court ("Contempt Motion") filed by Defendants/Consolidated Plaintiffs/Counterclaimants Donna Chandler and Show Colors, Inc. (collectively, "the Chandler Parties"), [Filing No. 224].  This Order addresses each of those motions, as well as other matters.

**I.**

**BACKGROUND**

Ms. Chandler, Mr. DeTrude, and Content & Commerce (acting through its owner, Keneth Zweigel), formed a company called My K9 Behaves, LLC ("My K9 Behaves") to develop and distribute materials related to canine behavioral training.  The relationship eventually grew contentious, with Ms. Chandler on one side and Mr. DeTrude and Mr. Zweigel together on the other.  The Chandler Parties and the C&C Parties each filed separate lawsuits suing the other, which were ultimately consolidated into the present action before this Court.

Among the various claims at issue in this lawsuit was a claim by the Chandler Parties, asking the Court to judicially dissolve My K9 Behaves pursuant to Indiana Code § 23-18-9-2.  In February 2021, the Chandler Parties filed a Motion for Injunctive Relief, asking the Court to judicially dissolve My K9 Behaves and to enjoin the C&C Parties and Mr. Zweigel from, among other things: utilizing Ms. Chandler's name, image, and likeness; interfering with Ms. Chandler's business relationships; using Ms. Chandler's intellectual property; and operating My K9 Behaves.  [Filing No. 51.]  On August 11, August 12, and September 9, 2021, the Court held an

evidentiary hearing on the Chandler Parties' Motion for Injunctive Relief.  [*See* Filing No. 143; Filing No. 144; Filing No. 153.]  At the start of the hearing, pursuant to Federal Rule of Civil Procedure 65(a)(2), the Court consolidated the evidentiary hearing with a trial on the merits solely on the issue of the Chandler Parties' claim for judicial dissolution of My K9 Behaves. [*See* Filing No. 143 at 2.]  The hearing was bifurcated in order to afford the C&C parties an opportunity to prepare their evidentiary presentation.  They opted not to present evidence at the second hearing date.

On February 1, 2022, the Court issued is Findings of Fact and Conclusions of Law, which judicially dissolved My K9 Behaves ("the Dissolution Order").  [Filing No. 194.]  In doing so, the Court noted that judicial dissolution is a proceeding in equity and looked to the Operating Agreement of My K9 Behaves as a guide in fashioning an equitable process for dissolving the company.  [Filing No. 194 at 24-27.]  Specifically, the Court determined that, consistent with the spirit of the Operating Agreement, "[o]wnership of any and all trademark and copyright interests relating to Ms. Chandler's works on canine behavioral training—including but not limited to her published books, training manual, [a canine training video called Good Dog! Oneder Class ("the Video")], and any other derivative works—shall be transferred from My K9 Behaves to Ms. Chandler."  [Filing No. 194 at 24-26; Filing No. 194 at 29.]  The Court further determined that the Chandler Parties would be required to pay the C&C Parties consideration for their membership interests in My K9 Behaves in the amount of five years' worth of earnings, although the Court did not specifically determine a payout amount and instead left that question open for resolution following additional submissions by the parties.  [Filing No. 194 at 26-29.]  Finally, the Court ordered the parties to confer, and to call upon the Magistrate Judge if necessary, to settle My K9 Behaves' remaining affairs by mutual agreement.  [Filing No. 194 at 27; *see also*

Filing No. 194 at 29 ("The parties shall confer and endeavor to wind-up the affairs of My K9 Behaves, including any actions not specifically addressed in this Order[.]").]

On March 1, 2022, the C&C Parties filed their Motion to Reconsider.  [Filing No. 204.] On May 6, 2022, the Chandler Parties filed their Contempt Motion.  [Filing No. 224.]  Both motions were fully briefed, and the Court held a hearing on the motions on September 30, 2022. [*See* Filing No. 253.]  Accordingly, the motions are ripe for the Court's decision.

## II.
### MOTION TO RECONSIDER

### A.  Standard of Review

The C&C Parties seek relief under Federal Rules of Civil Procedure 52(b), 59(e), and 60(b).  [*See* Filing No. 207.]  They do not, however, address Federal Rule of Civil Procedure 54(b), which the Court finds is the proper vehicle for the relief the C&C Parties seek.  *See Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (concluding that the district court erred in considering a motion for reconsideration under Rule 60(b) because "no final judgment had been entered yet" and "[t]hus, Rule 60(b) was inapplicable"); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (explaining that "a traditional Rule 59(e) motion to reconsider . . . can only follow a 'judgment'" while "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment").[1]

Rule 54(b) provides that "any order or . . . decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the

---

[1] Although there are procedural differences between each of these rules, the standards for obtaining relief under these rules are not so different as to affect the result in this case. *See, e.g.*, *Brightview Grp., LP v. Teeters*, 2020 WL 4003168, at *2 (D. Md. July 15, 2020) ("Generally, whether a motion is filed under Rule 52(b), 54(b), 59(e), or 60(b), the moving party must demonstrate a clear legal error in the Court's prior ruling, provide newly discovered evidence that warrants reconsideration, or cite some intervening change in controlling law.").

action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

"Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" Davis v. Carmel Clay Schs., 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)) (additional quotations omitted). A court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact; however, a motion to reconsider is not an occasion to make new arguments. Granite St. Ins. Co. v. Degerlia, 925 F.2d 189, 192 n.7 (7th Cir. 1991). In addition, a court may grant a motion based on newly discovered evidence, which is evidence that was unknown to the moving party during the pendency of the initial motion and could not have been discovered and produced with reasonable diligence. Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269-70 (7th Cir. 1996).

However, "[m]otions to reconsider 'are not replays of the main event.'" Dominguez v. Lynch, 612 Fed. App'x 388, 390 (7th Cir. 2015) (quoting Khan v. Holder, 766 F.3d 689, 696 (7th Cir. 2014)). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." Caisse Nationale, 90 F.3d at 1270. A party also may not use a motion for reconsideration to present evidence that, with reasonable diligence, the party could have presented during the pendency of the motion. Id. "[I]ntentionally withholding essential facts for

later use on reconsideration is flatly prohibited," and a party may not introduce on reconsideration evidence that is not newly discovered. *Id*. at 1269-70.

### B. Discussion

The C&C Parties offer several grounds for reconsidering and/or amending the Dissolution Order. [Filing No. 207 at 9-26.] Specifically, they argue that: (1) the procedures established by the Court for dissolving and winding up the affairs of My K9 Behaves do not comply with the Indiana Business Flexibility Act, [Filing No. 207 at 9-16]; (2) the Dissolution Order contains factual findings and legal conclusions that are outside the scope of the adversarial issues presented by the parties at the preliminary injunction hearing, [Filing No. 207 at 16-18]; (3) failing to amend the Dissolution Order would result in manifest injustice, [Filing No. 207 at 18-20]; (4) "newly discovered evidence" in the form of emails demonstrates that Ms. Chandler finished the manuscript of a book she was writing ("the Book") but refused to publish it to the detriment of My K9 Behaves and its members, [Filing No. 207 at 22-24]; and (5) Ms. Chandler committed fraud on the Court by failing to produce relevant evidence and lying about the status of her book, [Filing No. 207 at 24-26]. The Court will address each of these issues in turn.

#### 1. The Indiana Business Flexibility Act

As the Court noted in the Dissolution Order, "[j]udicial dissolution is essentially a proceeding in equity." [Filing No. 194 at 24 (quoting *Gagne v. Gagne*, 459 P.3d 686, 696 (Colo. Ct. App. 2019)).] The C&C Parties do not dispute this proposition. [*See* Filing No. 207 at 9 (acknowledging that "an order of dissolution is an equitable remedy within the Court's discretion").] The C&C Parties similarly do not provide any authority contradicting the authority relied upon by the Court providing that, under Indiana law, "[e]quity has power, where necessary, to pierce rigid statutory rules to prevent injustice." [Filing No. 194 at 24 (quoting

*Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178 (Ind. Ct. App. 2006)).]   Numerous Indiana courts have recited this same proposition. *See, e.g.*, *N. Indiana Pub. Serv. Co. v. Sloan*, 4 N.E.3d 760, 767 (Ind. Ct. App. 2014); *M Jewell, LLC v. Powell*, 954 N.E.2d 1053, 1056 (Ind. Ct. App. 2011). In this case, the Court considered the totality of the circumstances and fashioned an equitable remedy intended to do justice.  Noting in the provisions of the Indiana Business Flexibility Act cited by the C&C Parties demonstrate that the Court's ordered remedy was unjust or erroneous as a matter of law.  In other words, the C&C Parties have not identified a basis for reconsideration.

### 2. *The Scope of Adversarial Issues Presented by the Parties*

The C&C Parties assert that "numerous findings of fact and conclusions of law" contained in the Dissolution Order were outside the scope of the adversarial issues presented by the parties, specifically the Court's directives concerning what should happen to the Book and the Video upon dissolution of My K9 Behaves.  [Filing No. 207 at 16-18.]  But the parties spent a great deal of time discussing and presenting evidence concerning both the Book and the Video at the preliminary injunction hearing and in their related briefing.  And the Court specifically directed the parties to present argument concerning what should happen to the company and its assets in the event of dissolution.  Accordingly, this argument does not provide a basis for reconsideration.

### 3. *Manifest Injustice*

The C&C Parties contend that the Dissolution Order improperly rewards the Chandler Parties despite their "several offensive actions," which include Ms. Chandler attempting to withdraw from My K9 Behaves and providing false testimony.  [Filing No. 207 at 18-20.]  But the Court has been aware of, and has acknowledged, Ms. Chandler's improper behavior at every stage of this litigation.  The Court does not condone her actions, in the same way that it does not

condone the actions of Mr. DeTrude or Mr. Zweigel.  [*See* Filing No. 194 at 24 ("The Court finds that all parties to this action are unsympathetic and come with unclean hands.").]  This is a case of proverbial pots and kettles, and it is in this context that the Court exercised its equitable powers to fashion a remedy that, in the Court's view, is fair to all parties.  The C&C Parties have not demonstrated manifest injustice warranting reconsideration.

> ### 4.  *"Newly Discovered" Evidence*

The C&C Parties point to emails sent by Ms. Chandler and contend that those emails establish that Ms. Chandler finished writing the Book before seeking to dissolve My K9 Behaves.  The Court has reviewed these emails, which were filed under seal.  [*See* Filing No. 206; Filing No. 206-1.]  Notably, Mr. DeTrude and/or Mr. Zweigel were copied on many of these emails, and the emails to which they were not parties contain information that is merely duplicative of information contained in emails to which they were parties.  [*See, e.g.*, Filing No. 206-1 at 14 (February 2019 email from Ms. Chandler to Mr. DeTrude, Mr. Zweigel, and others, stating: "I have completed the writing of all the chapters").  Because Mr. DeTrude and Mr. Zweigel received these emails, and as a result knew of their existence long before the preliminary injunction hearing, the emails cannot constitute newly discovered evidence justifying reconsideration of the Dissolution Order.  *See Caisse Nationale*, 90 F.3d at 1269-70.

Moreover, it is unclear what difference these emails make.  At the time it issued the Dissolution Order, the Court was aware of the unfinished Book, and to date the Book has still yet to be published.  There is nothing the Court can do to compel publication of the Book, and granting the C&C Parties' demand to be compensated for the value of the Book would require the Court to speculate about the value it will have once it is published, assuming it will ever be published at all.  This lack of certainty greatly undermines the C&C Parties' claim that the Court

committed a manifest error in concluding that the company's ongoing earnings constitute the proper measure of compensation for the C&C Parties.

     5.   *"Fraud" on the Court*

     The C&C Parties believe that Ms. Chandler has perjured herself by testifying that the Book was unfinished and committed misconduct by failing to produce emails (even though, as discussed above, those emails were sent to Mr. DeTrude and Mr. Zweigel too several years ago). [Filing No. 207 at 26.]  The Court understands the C&C Parties' frustration with what they view as Ms. Chandler's attempts to withhold from them money that they, as part of My K9 Behaves, could have made off of the Book had the business relationship among the parties survived.  And the Court agrees that Ms. Chandler's credibility has been undermined by her behavior.  But again, the Court reminds the C&C Parties that their behavior has similarly undermined their credibility in the eyes of the Court.  [*See* Filing No. 194 at 23 (finding that "Mr. Zweigel has demonstrated a penchant for instigating conflict and provoking emotional responses and was also untruthful at the hearing").]  Regardless, the facts remain that the Book is still unpublished and the business relationship among the parties did not survive, and nothing in the C&C Parties' motion demonstrates that they are entitled to more money to account for the unknown, speculative value of the Book.  Accordingly, these arguments do not provide a basis for reconsideration.

     6.   *Request for Certification for Interlocutory Appeal*

     In the event that the Court declines to reconsider or amend the Dissolution Order, the C&C Parties request that the Court certify the issue for immediate appeal pursuant to 28 U.S.C. § 1292(b).  [Filing No. 207 at 26.]  However, they do not meaningfully develop any argument as

to why certification for immediate appeal is appropriate, and the Court therefore rejects their request.

Based on the foregoing, the C&C Parties' Motion to Reconsider, [Filing No. 204], is **DENIED** in its entirety.

### III.
### CONTEMPT MOTION

As an initial matter, although the Contempt Motion is styled as a motion for a finding of civil contempt, the Chandler Parties reference the criminal contempt statute, 18 U.S.C. § 401, in the motion. [*See* Filing No. 225 at 10.] Civil and criminal contempt are not the same, and the distinction between the two is significant in terms of the type of process that is due for their imposition and the type of sanction that can be imposed. *See, e.g.*, *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016). Specifically, criminal contempt proceedings must follow the procedures outlined in Federal Rule of Criminal Procedure 42 and must afford the accused party the Constitutional protections afforded in criminal cases. *Id.* By contrast, civil contempt may be proven by clear and convincing evidence and be imposed "without the full criminal procedural process." *Id. See also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (noting that civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"). Moreover, civil contempt sanctions may be either coercive or remedial—meaning they are "designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy"—while criminal contempt sanctions are punitive—meaning "they are meant to vindicate the authority of the court." *Lightspeed Media Corp.*, 830 F.3d at 508 (internal quotations and citations omitted).

In this case, although the Court has held a hearing on the Contempt Motion, it has not followed the procedures set forth in Federal Rule of Criminal Procedure 42, and therefore this is not a criminal contempt proceeding and the Court will not consider imposing criminal contempt sanctions.  In any event, the relief requested by the Chandler Parties—that the C&C Parties "should be found to be in civil contempt and ordered to provide the information, materials, and actions requested" in correspondence from the Chandler Parties' counsel, as well as ordered to pay the Chandler Parties' attorneys' fees incurred in connection with litigating the Contempt Motion, [Filing No. 225 at 13]—is coercive and remedial in nature and therefore more consistent with civil contempt.  Accordingly, the Court will consider the Contempt Motion as only seeking a finding of civil contempt.

A party seeking sanctions for civil contempt must demonstrate by clear and convincing evidence that the opposing party is in violation of a court order.  *Bailey v. Roob*, 567 F.3d 930, 934 (7th Cir. 2009).  "Before holding a person in civil contempt, a district court must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated."  *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015) (internal quotations and citation omitted).  There also must be evidence before the court showing that either: (1) the party willfully refused to comply with a court order; or (2) the party "was not 'reasonably diligent' in carrying out the terms of the court order."  *Bailey*, 567 F.3d at 935.

The Chandler Parties assert that the C&C Parties violated the Dissolution Order by refusing to confer regarding the winding up of My K9 Behaves.  [Filing No. 225 at 10-11.]  They also assert that the C&C Parties have engaged in other misconduct, including: (1) Mr. Zweigel unilaterally revoking customers' access to the Video, which they had already purchased; (2) Mr.

Zweigel misappropriating company funds by making purchases on his company credit card; (3) counsel ignoring requests for access to the company's website; (4) Mr. DeTrude "set[ting] up a business that directly competes with Donna Chandler"; (5) the C&C Parties intentionally interfering with Ms. Chandler's business relationships; and (6) the C&C Parties failing to cooperate in assigning intellectual property back to Ms. Chandler.  [Filing No. 225 at 3-11.]  The Chandler Parties assert that the C&C Parties "should be found to be in civil contempt and ordered to provide the information, materials, and actions requested" in correspondence from the Chandler Parties' counsel, as well as ordered to pay the Chandler Parties' attorneys' fees incurred in connection with litigating the Contempt Motion.  [Filing No. 225 at 13.]

As the Court explained to the parties at the September 30, 2022 hearing, the Dissolution Order clearly and unequivocally provides, in relevant part, that: (1) "[o]wnership of any and all trademark and copyright interests relating to Ms. Chandler's works on canine behavioral training—including but not limited to her published books, training manual, the Video, and any other derivative works—shall be transferred from My K9 Behaves to Ms. Chandler"; and (2) "[t]he parties shall confer and endeavor to wind-up the affairs of My K9 Behaves, including any actions not specifically addressed in [the Dissolution Order]."  [Filing No. 194 at 29.]  The parties acknowledged at the hearing that the intellectual property has not yet been transferred as ordered, however the Court is already involved in facilitating the transfer by reviewing and approving the assignment agreements.  [*See* Filing No. 253; Filing No. 254; Filing No. 255; Filing No. 258.]  Accordingly, the Court finds that, although the parties have not yet complied

with this directive in the Dissolution Order, no further sanctions are appropriate with respect to the transfer of intellectual property.[2]

However, the Court is concerned by the C&C Parties'—and more specifically, their counsel's—refusal to confer with the Chandler Parties' and their counsel as ordered. The Court is also troubled by the fact that Mr. Zweigel unilaterally, albeit temporarily, revoked customers' access to the Video, and that his counsel, Mr. Huffman, advised him that it was permissible to do so without conferring with the Chandler Parties or their counsel. Both Mr. Zweigel and Mr. Huffman admitted this conduct at the September 20, 2022 hearing. As the Court has already found, [Filing No. 253 at 2], this failure to confer is in direct contravention of the Dissolution Order, which expressly directed the parties to confer and work together as they wind up the affairs of My K9 Behaves. As a result, the Chandler Parties' Contempt Motion, [Filing No. 224], is **GRANTED** to the extent that the Court finds Mr. Huffman in contempt for failure to exercise reasonable diligence to follow the express directives of the Dissolution Order. Mr. Huffman is therefore **ORDERED** to pay **$500.00** to the Chandler Parties' counsel, Plopper & Partners LLP, **within 30 days** of the date of this Order. The Court finds that this amount represents a fair estimate of the attorneys' fees incurred in litigating the portion of the Contempt Motion dealing with the C&C Parties' failure to confer as ordered. To the extent that the Chandler Parties seek any other relief, the Contempt Motion is **DENIED**.

---

[2] The Court notes that the Chandler Parties' complaints extend beyond the Court's Dissolution Order, for example seeking a non-compete order for a related business opened by Mr. DeTrude. The Court further notes that the proposed transfer paperwork submitted by the Chandler Parties included terms well beyond the dissolution of My K9 Behaves, and again refers to the non-competition provisions. Thus, some the delay in the windup is the fault of the Chandler Parties.

## IV.
### OTHER MATTERS

**A.  Payout Amounts**

Consistent with the directive in the Dissolution Order, the parties submitted competing statements regarding My K9 Behaves' net distributions for 2021.  [Filing No. 202; Filing No. 203.]  The parties' respective figures differ slightly because, as the Chandler Parties acknowledge in their filing, the Chandler Parties' figures do not account for "the Payout Percentages stated in the Company Operating Agreement and may not account for any imbalances that are present in the historical distributions of [the] Company from 2017 through the present."  [Filing No. 202 at 2.]  Because the C&C Parties' figures properly account for the payout percentages established in the My K9 Behaves operating agreement, the Court finds that those figures should be used.

Accordingly, as outlined in the Dissolution Order, [Filing No. 194 at 29], Ms. Chandler is now **ORDERED** to pay consideration to Mr. DeTrude and to Content & Commerce in the amount of **$176,250.00 each**.  Ms. Chandler shall pay the consideration in monthly installments of at least **$2,937.50 each** to Mr. DeTrude and to Content & Commerce, on the first day of each month, beginning on **November 1, 2022**, for 60 months, without interest, and with no prepayment penalty should she choose to pay the aggregate amount or balance owed early.

**B.  Winding Up the Affairs of My K9 Behaves**

As ordered, the parties each submitted "to-do lists" of matters that need to be addressed in the winding up of My K9 Behaves.  [Filing No. 256; Filing No. 257.]  Having considered those submissions, the Court now **ORDERS** that the parties complete the following actions within **30 days** of the issuance of this Order:

- Transfer to Ms. Chandler all intellectual property as outlined in the Dissolution Order, using the agreements to be approved by the Court, and then submit those

agreements to the United States Patent and Trademark Office and the United States Copyright Office;[3]

- Return to Ms. Chandler or her counsel any and all copies of the Book manuscript currently in the possession of the C&C Parties or their counsel;

- Close the My K9 Behaves PayPal account and distribute all funds, if any, in accordance with the Payout Percentages established in the Operating Agreement (50% to Donna Chandler, 25% to Kevin DeTrude, and 25% to Content & Commerce);

- Determine the existence of any accounts payable, and if any accounts payable exist, use the funds from Chase Bank account xxx6955 to satisfy any financial obligations;

- Distribute any remaining funds in Chase Bank account xxx6955 according to the Payout Percentages established in the Operating Agreement, and then close Chase Bank account xxx6955 and cancel all credit and debit cards connected to the account;

- Notify all affiliates and creditors, if any, of the dissolution of My K9 Behaves;

- Deactivate all My K9 Behaves social media accounts, including but not limited to Facebook, YouTube, and Twitter;

- Give notice to Bizapedia that My K9 Behaves is dissolved, and deactivate the My K9 Behaves Bizapedia page, if possible;

---

[3] Because the Court is already assisting the parties in completing this action, it is excused from the 30-day deadline. The parties shall follow any additional directives provided by the Court in any future orders regarding these transfers.

- Transfer My K9 Behaves' Amazon Web Services and Wistia accounts to Ms. Chandler;

- Transfer all web domains hosted via GoDaddy to Ms. Chandler;

- Transfer to Ms. Chandler a complete list of My K9 Behaves' affiliates, with each affiliate's contact information;

- Resolve the dispute concerning the 2021 net distributions and distribute the funds currently held in escrow in the manner ultimately agreed upon by the parties;

- Facilitate filing of My K9 Behaves' 2022 tax return;[4] and

- Jointly certify that My K9 Behaves has no unpaid liabilities.

In addition, within **30 days** of the date of this Order, the parties **shall each file a Notice to the Court** stating whether all of these items have been completed.  For each item that has not been completed—with the exception of those items expressly excused from the 30-day deadline above—the parties must explain why the item has not been completed and outline the progress made, if any, toward completion.

### V.
### CONCLUSION

Based on the foregoing, the C&C Parties' Motion to Reconsider, [204], is **DENIED**.  The Chandler Parties' Contempt Motion, [224], is **GRANTED** to the extent that the Court finds Mr. Huffman in contempt for failure to abide by the directives in the Dissolution Order and **ORDERS** him to pay **$500.00** to the Chandler Parties' counsel, Plopper & Partners LLP, **within 30 days** of the date of this Order.  The Chandler Parties' Contempt Motion, [224], is **DENIED** to the extent that it seeks any other relief.

---

[4] This item is excused from the 30-day deadline and may be completed in 2023 pursuant to ordinary tax filing deadlines.

The Court further **ORDERS** Ms. Chandler to pay consideration to Mr. DeTrude and to Content & Commerce in the amount of **$176,250.00 each**.   Ms. Chandler shall pay the consideration in monthly installments of at least **$2,937.50 each** to Mr. DeTrude and to Content Commerce, on the first day of each month, beginning on **November 1, 2022**, for 60 months, without interest, and with no prepayment penalty should she choose to pay the aggregate amount or balance owed early.

Finally, the Court **ORDERS** the parties to complete the action items set forth above **within 30 days** of the date of this Order, unless otherwise noted.  Also **within 30 days** of the date of this Order, the parties **shall each file a Notice to the Court** stating whether all of these items have been completed, and if not, what progress has been made toward their completion.

The Court requests that the Magistrate Judge confer with the parties as soon as reasonably practicable to continue efforts to reach an agreed resolution of this matter short of trial.  If no such resolution can be reached, the Court requests that the Magistrate Judge determine a schedule for the parties to complete briefing on the pending Cross-Motions for Summary Judgment.

Date: 10/17/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

17